**MEMBERS INSURANCE COMPANY, Appellant,**

v.

**Clifford BRANSCUM, Appellee.**

**No. 05–90–00556–CV.**

Court of Appeals of Texas, Dallas.

Jan. 16, 1991.

Rehearing Denied Feb. 19, 1991.

Michael G. Lee, Roy L. Stacy, Dallas, for appellant.

Melvin H. Wolovits, William T. Mitchell, III, Dallas, for appellee.

Before STEWART, BAKER and WHITTINGTON, JJ.

## OPINION

BAKER, Justice.

Clifford Branscum brought this suit as a third-party beneficiary on an automobile liability insurance policy issued by Members Insurance Company. The parties tried the case to the court on an agreed statement of facts. The trial court rendered judgment for Branscum for Members' policy limits. In three points of error, Members contends the trial court erred in: (1) denying it summary judgment since Members showed as a matter of law that its insured's failure to comply with the policy provisions prejudiced Members; (2) granting Branscum judgment since the agreed statement of facts showed as a matter of law that the insured's failure to cooperate and forward the suit papers prejudiced Members; and (3) requiring Members to prove "substantial" prejudice and holding Members to a standard of ordinary care. We hold that Members established as a matter of law that its insured's failure to cooperate and to forward suit papers to Members prejudiced Members. We reverse the trial court's judgment and render judgment that Branscum take nothing from Members.

## FACTS

### 1. The Underlying Claim

Branscum had an automobile accident with the permissive driver of a car owned by the named insured under Members' automobile liability policy. Branscum hired attorneys to represent him in his personal injury claim. Members hired an independent adjuster to investigate the claim.

Settlement negotiations failed. Branscum's attorney told the adjuster that Branscum would file suit.

Branscum filed suit. Branscum served the insured the same day. Branscum's lawyer told the adjuster that Branscum had filed suit. The adjuster sent a letter to the insured requesting that she notify him of service and to immediately send the suit papers to him.

Neither Members nor the adjuster attempted any more communication with the insured. Nor did the adjuster and Branscum's lawyer discuss the suit. Neither Members nor the adjuster tried to determine the court or county where Branscum filed suit, the number of the suit, or whether Branscum served the insured.

The insured did not advise the adjuster or Members that Branscum served her. Nor did she forward the suit papers to either the adjuster or Members. The insured did not file an answer. Branscum got a default judgment. About three and a half months later, the adjuster called Branscum's attorney about the claim's status. He learned for the first time that Branscum had served the insured and had obtained a default judgment. Branscum's attorney then sent the adjuster a copy of the default judgment. Branscum made demand on Members for payment of the policy limits in partial satisfaction of the default judgment. Members refused the demand.

### 2. The Policy Provision

The policy Members issued to the insured contained the following:

**Part E—Duties after an accident or loss.**

We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any insured persons and of any witnesses. If we show that your failure to provide notice prejudices our defense, there is no liability coverage under the policy.

A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

### PROCEDURAL HISTORY

Branscum filed this suit against Members as a third-party beneficiary of Members' policy. Members filed a motion for summary judgment. The motion asserted that the insured's failure to comply with the policy provisions requiring cooperation and transmittal of any legal papers resulted in the default judgment. Members asserted that its insured's breach prejudiced Members in the defense of the claim.

The trial court granted Members a partial summary judgment, holding Members had shown as a matter of law: (1) that the insured did not cooperate with Members in the investigation, settlement, or defense of the original lawsuit; and (2) that the insured did not send to Members copies of any notices or legal papers received in the underlying lawsuit. The court refused to grant Members summary judgment on the entire claim. The court left for further proceedings the fact issue of whether the insured's failure prejudiced Members.

Branscum then moved for summary judgment, contending that its insured's failure to cooperate and forward suit papers did not prejudice Members. Branscum argued that: (1) his attorney had told Members' adjuster that Branscum had filed suit; (2) Members made no effort to find out anything else about the suit; and (3) Members' own neglect prejudiced its defense of the claim. Branscum asserted that as a matter of law Members could not show prejudice by its insured's failure to cooperate and forward the suit papers. The court denied Branscum's motion.

Members and Branscum then filed an agreed statement of facts. The trial court entered judgment for Branscum for Members' policy limits. Following entry of judgment, the trial court made findings of fact which were essentially the same as the agreed statement of facts. The court also

found that Members did not prove by a preponderance of the evidence that the failure of the insured to forward the petition and citation substantially prejudiced Members since Members received actual notice of suit in time to have protected its interest by the exercise of ordinary care. The trial court concluded that Members was liable to Branscum to the extent of Members' policy limits.

## MEMBERS' POINTS OF ERROR

### 1. Denial of Summary Judgment

In its first point of error, Members contends the trial court erred by denying Members a summary judgment. Members contends it showed as a matter of law that the failure of its insured to comply with policy provisions resulted in prejudice to Members. Members recognizes that appellate courts may not review the propriety of an order overruling a motion for summary judgment. *See Wright v. Wright,* 154 Tex. 138, 274 S.W.2d 670, 674 (1955). However, Members argues that we should apply the exception to the general rule established by the Texas Supreme Court in *Tobin v. Garcia.*[1] Members contends the exception applies because the trial was not in the conventional manner but upon an agreed statement of facts after the presentation of motions for summary judgment.

■ *Tobin* holds that when both parties file motions for summary judgment and the court grants one and denies the other, on review the court of appeals should determine all questions presented. If the appellate court finds reversible error, the court should render the judgment the trial court should have entered. *See Tobin,* 316 S.W.2d at 400. In this case, although both parties filed motions for summary judgment, the trial court granted Members only a partial summary judgment and denied Branscum's motion. Therefore, the orders were interlocutory. The trial court had not yet entered a final and appealable judgment. We decline the invitation to extend the *Tobin* rationale to this case. *See Ack-*

*ermann v. Vordenbaum,* 403 S.W.2d 362, 365 (Tex.1966). We overrule Members' first point of error.

### 2. Prejudice as a Matter of Law

In its second point of error, Members contends the trial court erred by granting Branscum judgment since the agreed facts showed as a matter of law that its insured's failure to cooperate and to forward suit papers prejudiced Members. Members points out that the trial court found as a matter of law that Members showed that the insured had not cooperated with Members. Nor did she send Members copies of the suit papers. Members contends that if it showed that the insured's failure to cooperate and forward the suit papers prejudiced Members' defense, then no coverage is available to Branscum under the policy. Members argues it showed prejudice because the insured's breach of the policy provisions denied Members an opportunity to contest Branscum's claims. Members consequently suffered the rendition of a default judgment. Members further argues that had it known of the default judgment within thirty days of entry, it would have had an opportunity to try to set it aside. Members contends it showed prejudice within the policy provisions as a matter of law.

■ Branscum responds that when the Texas Legislature enacted the Compulsory Automobile Liability Insurance Act in 1981,[2] its intention was to void all policy defenses, including the failure of an insured to cooperate or forward suit papers. Branscum also argues that the agreed facts show Members had actual notice of the pending lawsuit on two occasions. Branscum concludes that since Members took no action to determine the facts necessary to timely file an answer, Members cannot show the necessary prejudice.

We have rejected the argument that the Legislature abolished policy defenses to claims against insurers by the Texas Compulsory Automobile Insurance Act. *See*

---

**1.** 159 Tex. 58, 316 S.W.2d 396 (1958).

**2.** Tex.Rev.Civ.Stat.Ann. art. 6701h, § 1A(a) (Vernon Supp.1991).

*Ratcliff v. National County Mut. Fire Ins. Co.,* 735 S.W.2d 955, 957 (Tex.App.—Dallas 1987, no writ).

The crux of prejudice to Members is whether Members had notice of the suit against its insured and, if so, the effect of that notice. The agreed facts reflect that Branscum's attorney told Members' adjuster that he intended to file suit. He then told the adjuster that Branscum had filed suit. The insured did not cooperate with Members and did not forward the suit papers to Members or the adjuster. Members did not learn of the entry of the default judgment until after the time it could file a motion for new trial or take an appeal from the judgment.

Members asserts that these facts show prejudice to it as a matter of law, entitling it to judgment in its favor on the policy defense. Members principally relies on *Ratcliff* and *Kimble v. Aetna Casualty and Surety Co.,* 767 S.W.2d 846 (Tex.App.—Amarillo 1989, writ denied).

Branscum responds that notice of the underlying suit is the litmus test to determine prejudice. Branscum contends that Members had actual notice of the underlying suit before answer day. Therefore, the insured's failure did not prejudice Members' defense as a matter of law, and the trial court's judgment should stand. Branscum principally relies on *Allstate Insurance Co. v. Pare,* 688 S.W.2d 680 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.).

Branscum's contention is that the conversation between his attorney and the adjuster that suit would be filed and the later conversation that Branscum had filed suit were actual notice of the suit. Branscum argues this notice triggered an obligation that Members exercise ordinary care by investigating further to protect the insured's rights before answer day. We disagree.

First, we conclude that the facts in *Pare* are distinguishable. In *Pare,* the claimant's attorney and the insurer's claims manager had several settlement discussions after the claimant filed suit and before the court entered a default judgment. Before the claimant took the default, the claimant's attorney sent a copy of the original petition filed in the case to the insurer. Correspondence between the insurer and a co-defendant's insurer before entry of the default judgment reflected the insurer's knowledge of filing of the suit, service on its insured, and amount of damages sought. Nonetheless, the insurer let the case go to default judgment without taking further action. The insurer's claim manager testified that the insured had fully cooperated in providing the necessary information about the claim. *See Pare,* 688 S.W.2d at 683–84.

Second, the facts of this case are more similar to those found in *Kimble* and *Ratcliff.* In *Kimble,* the insured notified the insurer of the suit after default judgment but before the time had expired for filing a motion for new trial. The insurer did not seek to have the judgment set aside. The *Kimble* court held that prejudice results to the insurer by the change in its position brought about by the insured's failure to forward the suit papers until after the default. Prejudice results even though the option to file a motion for new trial is still available to the insurer. *Kimble,* 767 S.W.2d at 851.

In *Ratcliff,* the insured did not inform his insurer of the suit, nor, despite settlement discussions, did the attorney for the claimant notify the insurer of the entry of judgment until after the judgment became final. The *Ratcliff* court held that the rendition of the default judgment prejudiced the insurer and that the insurer could assert breach of the notice condition of its policy as a defense to a suit on the judgment. *Ratcliff,* 735 S.W.2d at 956.

Third, we distinguish between an insurer's notice of service of the suit on its insured, as in *Pare,* and its notice of the claim, as in *Kimble* and *Ratcliff.* Actual knowledge of the *claim* does not equate to actual knowledge of service of the *suit* on Members' insured. The assertion that Branscum would file suit and the later assertion that he had filed suit imposed no duty or obligation on the insured or on Members to take any action. It is the service of citation upon the insured which

imposes on the insured the duty to answer to prevent a default judgment. No duty is imposed on an insurer until its insured is served and sends the suit papers to the insurer. This action by the insured triggers the insurer's obligation to tender a defense and answer the suit.

In this case, when informed that Branscum had filed suit, the adjuster wrote Members' insured and admonished her to send the suit papers to him once she was served. Although the insured was served with suit papers, she did not notify Members she had been served, nor did she send the suit papers to Members. Members received notice of the default judgment only after the judgment was final and it was too late to move for a new trial or perfect an appeal.

We conclude that the *Kimble/Ratcliff* rationale applies here. We sustain Members' second point of error.

### 3. Proof of "Substantial" Prejudice and Standard of Ordinary Care

In its third point of error, Members contends the trial court erred in requiring it to prove "substantial" prejudice and in holding it to a standard of ordinary care. Our decision to sustain Members' second point of error is dispositive of this appeal. While it is not necessary to pass on the third point of error, we consider the question raised of sufficient importance to rule upon it for the guidance of the bench and bar.

Members argues that it is required only to show that its insured's failure to provide notice prejudiced its defense in order to avoid liability coverage under the policy. It also contends language about ordinary care is wholly irrelevant to the issue before the court and places a nonexistent burden on Members.

Branscum responds that the general rule is an insurer shows prejudice for the failure of its insured to cooperate or forward suit papers only when the insurer can show that the breach "substantially" prejudiced it. See J. APPLEMAN, INSURANCE LAW AND PRACTICES, § 4771 (1962); *see also Jameson v. Farmers Mut. Auto Ins. Co.*, 181 Kan.

120, 309 P.2d 394, 408 (1957); *Hendrix v. Jones*, 580 S.W.2d 740, 744 (Mo.1979). Branscum concludes the trial court applied the correct standard. Branscum also responds that a duty to exercise ordinary care in investigating the existence of potential lawsuits is an implied provision of the policy. We disagree.

The Texas State Board of Insurance, by an amendatory endorsement effective March 1, 1973, requires a showing of prejudice to the insurer by its insured's failure to forward suit papers before the failure will bar liability under the policy. *Texas State Board of Insurance Order No. 22582*, January 26, 1973. The required endorsement does not include the word "substantial." Nor does the endorsement explicitly or impliedly impose a duty on the insurer to determine if suit has been filed and served if the insured breaches the notice provision. The Board has not amended the language of the required endorsement since its effective date. Nor has the Texas Legislature adopted any enactment which either expressly or impliedly requires an insurer to show "substantial" prejudice or expressly or impliedly abolishes policy defenses. A decision of this nature rests with the Legislature. *See Ratcliff*, 735 S.W.2d at 958.

We conclude that application of a "substantial" prejudice standard is erroneous. Similarly, it is erroneous to impose on an insurer a duty to exercise ordinary care by requiring it to determine if suit has been filed and served when its policyholder has neither cooperated with the insurer nor forwarded suit papers. *See Kimble*, 767 S.W.2d at 850.

We reverse the trial court's judgment and render judgment that appellee, Clifford Branscum, take nothing from appellant, Members Insurance Company.